IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADAM R. KANE, #R-09804,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17−cv−01054−NJR |
| | ) |
| **DOCTOR SANTOS,** | ) |
| **MEDICAL DIRECTOR,** | ) |
| **NURSE PICKETT, and** | ) |
| **NURSE SCHUMUKOR,** | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Adam Kane, an inmate who is currently incarcerated at East Moline Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Centralia Correctional Center ("Centralia"). (Doc. 1). Plaintiff claims that he was denied adequate medical care for a growth on his right arm in 2015. (Doc. 1, pp. 3-7). He now brings this action against Centralia's Medical Director, Doctor Santos, Nurse Pickett, and Nurse Schumukor for violating his rights under the Eighth and Fourteenth Amendments. (Doc. 1, pp. 1-2). Plaintiff seeks monetary damages and injunctive relief. (Doc. 1, p. 8).

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

1

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives review under this standard.

### **The Complaint**

During his incarceration at Centralia, Plaintiff developed a large, painful growth on his right arm. (Doc. 1, p. 3). Lieutenant Rose[1] sent him to the prison's health care unit ("HCU") for treatment on October 4, 2015. *Id*. After examining the growth, a nurse told Plaintiff that he would be "alright" and sent him back to his cell with a Band-Aid. *Id*.

Plaintiff returned to the HCU three days later. (Doc. 1, p. 3). By this time, the growth on his arm was swollen and painful. *Id*. It was also oozing "noxious-smelling odorous fluids." *Id*. Plaintiff was sent back to his housing unit without any treatment. *Id*.

The same day, he returned to the HCU demanding to be seen. (Doc. 1, p. 3). Plaintiff complained of pain and swelling, and he requested a diagnosis and treatment. *Id*. When the HCU

---

[1] The statement of claim refers to Lieutenant Rose and several nurses. These individuals are not named as defendants in the case caption. Any claims against them are considered dismissed without prejudice from this action. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption").

nurse first saw him, she exclaimed, "[H]oly cow, how long have you had that?" *Id*. The nurse told Plaintiff that he was "not going anywhere" and admitted him to the HCU. *Id*.

The following day, Nurse Pickett met with Plaintiff to "purportedly swab the area for a biopsy." (Doc. 1, p. 4). At the time, the growth was still leaking fluids. *Id*. Doctor Santos entered the room and instructed Plaintiff to follow him into "surgery." *Id*. He appeared to have a scalpel and scissors in his possession. *Id*. Without prepping the area for surgery or applying a numbing agent, the doctor began cutting and snipping at the growth. *Id*. As the doctor cut "through live tissue," Plaintiff complained of excruciating pain. *Id*. In response to Plaintiff's complaints, the doctor asked, "What are you a boy scout?" *Id*. The doctor did not apply a numbing agent to Plaintiff's arm until "after-the-fact." *Id*.

Nurses Pickett and Schumukor were present during the entire procedure. (Doc. 1, p. 5). Neither objected to the doctor's actions nor took steps to stop him from performing surgery on Plaintiff. *Id*. They also took no steps to summon help from the nearby Medical Director, who was aware of the procedure and allegedly approved of or condoned the doctor's actions. *Id*. Instead, the nurses watched "in horror while . . . grimacing [and] . . . wincing with each snip." *Id*. Another nurse later described the doctor's actions as "barbaric." *Id*.

After getting over the initial shock associated with the doctor's actions and the lack of concern he showed for Plaintiff's pain, Plaintiff asked to be taken to a hospital. (Doc. 1, p. 4). In response, the doctor said, "Well, for this to be done correctly you'd need to go to an outside hospital but the State is broke, so this will have to do." (Doc. 1, p. 5). Doctor Santos then told Plaintiff that the growth was only an abscess, but a biopsy would still be ordered. *Id*.

Doctor Santos left a dime-sized hole in Plaintiff's arm. (Doc. 1, p. 5). Plaintiff was given a topical antibiotic, *i.e.*, Silvadine, and instructed to take daily showers in the HCU. *Id*. Plaintiff complied with the doctor's orders. *Id*.

Even so, his arm became infected. (Doc. 1, p. 5). Plaintiff complained of pain and discomfort on a daily basis. *Id*. He did so "for weeks." *Id*. When he finally met with Doctor Santos on October 20, 2015, he again requested treatment with an outside specialist. *Id*. The doctor disregarded his request for further treatment and instead noted that "everything was fine" in his medical records. *Id*. In contrast, the nurses noted that the wound had "serious drainage." (Doc. 1, p. 6).

Plaintiff alleges that his arm is now "substantially deformed." (Doc. 1, p. 6). A bubble-like mass, approximately 3" x 3" in size, protrudes an inch from his arm. *Id*. Frequently, Plaintiff can feel it spasm and tingle. *Id*. The deformity is unsightly and painful. *Id*. Plaintiff has also lost the full range of motion in his arm. *Id*.

## **Merits Review Under 28 U.S.C. § 1915A**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claim in Plaintiff's *pro se* Complaint into the following enumerated counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court:

**Count 1:** Eighth Amendment deliberate indifference to medical needs claim against Doctor Santos for denying Plaintiff adequate medical care for the growth on his right arm in October 2015.

**Count 2:** Eighth Amendment deliberate indifference to medical needs claim against Unknown Medical Director, Nurse Pickett, and Nurse Schumukor for failing to object to or intervene and stop the

> surgery performed by Doctor Santos on Plaintiff's right arm in October 2015.

**Count 3:** Fourteenth Amendment due process claim against Doctor Santos for depriving Plaintiff of a liberty interest when he performed surgery on his right arm without first obtaining his consent in October 2015.

As discussed in more detail below, all three claims survive screening and shall receive further review against the defendants named in connection with each claim above. **Any claims that are not listed above are considered dismissed without prejudice from this action.**

### Counts 1 and 2

The Eighth Amendment prohibits the cruel and unusual punishment of inmates. U.S. CONST., amend. VIII. It "imposes a duty on government officials to provide medical care to prisoners." *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)). *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison officials violate the Eighth Amendment when they exhibit deliberate indifference to a prisoner's serious medical needs. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Estelle*, 429 U.S. at 104). To state a claim based on the denial of adequate medical care, a prisoner must demonstrate that he suffered from a sufficiently serious medical condition (*i.e.*, an objective standard). *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). He also must demonstrate that each defendant responded to his serious medical need with deliberate indifference (*i.e.*, a subjective standard). *Id*.

The objective component of this claim is satisfied for screening purposes. A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir.

2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Plaintiff's growth was diagnosed as requiring treatment by medical professionals.

The subjective component of this claim is satisfied when a prison official "know[s] of and disregard[s] an excessive risk to inmate health." *Greeno*, 411 F.3d at 653. Neither "medical malpractice nor mere disagreement with a doctor's medical judgment" is sufficient to establish deliberate indifference. *Berry*, 604 F.3d at 441 (citing *Estelle*, 429 U.S. at 106; *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). At the same time, a prisoner is also "not required to show that he was literally ignored." *Berry*, 604 F.3d at 441 (citing *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). The choice of "easier and less efficacious treatment" for a serious medical need may amount to deliberate indifference. *Id.* (citations omitted). *See also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) (stating that "medical personnel cannot simply resort to an easier course of treatment that they know is ineffective").

The allegations support a deliberate indifference claim in Count 1 against Doctor Santos under this standard. The doctor allegedly resorted to an easier in-house surgical procedure simply because he believed that the State would not pay for proper medical care. At the time, he acknowledged that the procedure should be performed at a hospital by a specialist. Count 1 is subject to further review against Doctor Santos.

The allegations also support a deliberate indifference claim in Count 2 against Nurses Pickett and Schumukor, neither of whom objected to Doctor Santos's actions or took steps to stop him from performing the in-house procedure. While the medical system generally requires nurses to defer to the judgment of a treating physician, this deference cannot be "blind or unthinking, particularly if it is apparent that the physician's orders will likely harm the patient." *Berry*, 604 F.3d at 442 (citations omitted). The allegations suggest that both nurses failed to

question or object to the procedure performed by Doctor Santos, resorting instead to blind deference. Count 2 shall receive further review against both nurses.

This claim also shall proceed against the Unknown Medical Director. It is well settled that a government official is only liable for his or her own misconduct under § 1983. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (citation omitted). A § 1983 plaintiff cannot rely on a theory of *respondeat superior* and must instead allege that the defendant, through his or her own conduct, violated the Constitution. *Id*. at 777-78 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). Plaintiff alleges that this defendant was involved in the constitutional deprivation because he or she was aware of Plaintiff's medical condition and condoned or turned a blind eye to Doctor Santos's misconduct. Although the Court takes no position regarding the ultimate merits of this claim, it will allow Count 2 to proceed against the Unknown Medical Director.

**Count 3**

The Fourteenth Amendment guards against the deprivation of liberty or property without due process of law. *Washington v. Glucksberg*, 521 U.S. 702, 720-22 (1997). The Supreme Court of the United States has recognized a "general liberty interest in refusing medical treatment." *Cruzan v. Dir. Mo. Dep't of Health*, 497 U.S. 261, 278 (1990); *Vitekv. Jones*, 445 U.S. 480, 494 (1980); *Parham v. J.R.*, 442 U.S. 584, 600 (1979). At least one Circuit has held that this liberty interest includes the right to refuse surgery. *See, e.g., Runnels v. Rosendale*, 499 F.2d 733, 735 (9th Cir. 1974). Several Circuits have also recognized a prisoner's limited right to informed consent for treatment. *See, e.g., Poban v. Wright*, 459 F.3d 241, 249-50 (2d Cir. 2006); *White v. Napoleon*, 897 F.2d 103, 113 (3d Cir. 1990); *Rainwater v. Alarcon*, 268 F. App'x 531, 534 (9th Cir. 2008). The Second Circuit described the cause of action as follows:

> [T]he Fourteenth Amendment's recognized liberty interest in an individual's right to refuse medical treatment carries with it a concomitant right to such information

7

as a reasonable patient would deem necessary to make an informed decision regarding medical treatment. To establish a violation of this right, a prisoner must show that (1) government officials failed to provide him with such information; (2) this failure caused him to undergo medical treatment that he would have refused had he been so informed; and (3) the officials' failure was undertaken with deliberate indifference to the prisoner's right to refuse medical treatment.

*Pabon*, 459 F.3d at 246. According to the Second Circuit, the right to refuse treatment—and by extension the right to informed consent—is not unlimited and can be overridden by legitimate penological concerns. *Id.* at 252 ("If prison officials, including doctors, identify situations in which they reasonably believe that treatment is required, notwithstanding the prisoner's asserted right to refuse it, the right must give way."). Although the Seventh Circuit has recognized this theory of liability, it has not explicitly endorsed it. *See Cox v. Brubaker*, 558 F. App'x 677, 678-79 (7th Cir. 2014) (acknowledging that some circuits have found that prisoners have a substantive due process right to "such information as is reasonably necessary to make an informed decision to accept or reject proposed treatment").

This District and others have allowed similar substantive due process claims to proceed past threshold screening. *See, e.g., Maple v. PA Mills*, No. 15-cv-00341-SMY, 2015 WL 1840563, at *4 (S.D. Ill. Apr. 21, 2015) (assuming, for screening purposes, that a prisoner could assert informed consent substantive due process claim); *Knight v. Grossman*, No. 16-CV-1644-JPS, 2017 WL 168906, at *5 (E.D. Wis. Jan. 17, 2017). At this early stage, the Court will likewise allow Count 3 to proceed against Doctor Santos, based on his failure to obtain informed consent from Plaintiff before performing an in-house surgical procedure on him at Centralia in October 2015.

**Identification of Unknown Medical Director**

Plaintiff shall be allowed to proceed with Count 2 against the individual who served as Centralia's Medical Director in October 2015. This defendant must be identified with

8

particularity, however, before service of the Complaint can be made on him or her. Where a prisoner's Complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, the Warden of Centralia will be added as a defendant, in his or her official capacity only, and shall be responsible for responding to discovery aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of Defendant Unknown Medical Director is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation for this individual in the case caption and throughout the Complaint.

## Request for Injunctive Relief

In his Complaint, Plaintiff asks this Court to Order prison officials to refer him for corrective surgery. This request for injunctive relief appears to be moot as it relates to this case. Plaintiff transferred from Centralia to East Moline Correctional Center prior to bringing this action, and he does not complain that he is currently being denied medical care. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). Only if Plaintiff can show a realistic possibility that he would again be incarcerated at Centralia under the conditions described in the Complaint, would it be proper for the Court to consider injunctive relief in this case. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey,* 561 F.3d 664, 668 (7th Cir. 2009)).

Plaintiff is not without recourse. If officials at his present facility also have denied him necessary medical care, including corrective surgery, he may file a separate action against them and request injunctive relief in that case. His Complaint in this case includes no such claim against East Moline officials. Further, a suit against those officials likely belongs in the United States District Court for the Central District of Illinois – Rock Island Division.

## Disposition

The Clerk is directed to **ADD** the **WARDEN OF CENTRALIA CORRECTIONAL CENTER (official capacity only)** as a defendant for the sole purpose of responding to discovery aimed at identifying the Defendant **UNKNOWN MEDICAL DIRECTOR** with particularity.

**IT IS HEREBY ORDERED** that **COUNTS 1, 2,** and **3** survive screening. **COUNTS 1** and **3** will receive further review against Defendant **DOCTOR SANTOS**, and **COUNT 2** will proceed against Defendants **UNKNOWN MEDICAL DIRECTOR, NURSE PICKETT**, and **NURSE SCHUMUKOR**.

**IT IS ORDERED** that as to **COUNTS 1, 2,** and **3**, the Clerk of Court shall prepare for Defendants **UNKNOWN MEDICAL DIRECTOR (once identified), DOCTOR SANTOS, NURSE PICKETT**, **NURSE SCHUMUKOR,** and the **WARDEN OF CENTRALIA:** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of

Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on Defendants **UNKNOWN MEDICAL DIRECTOR** until such time as Plaintiff has identified the individual by name in a properly filed motion for substitution of parties. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a plan for discovery aimed at identifying Centralia's Unknown Medical Director (October 2015) with particularity. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, despite the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for

leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 24, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**