IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ADAM R. KANE,**<br><br>　　　　　　**Plaintiff,**<br><br>v.<br><br>**VENERIO SANTOS, REBECCA JO PICKETT, and LISA SCHUKAR,**<br><br>　　　　　　**Defendants.** | Case No. 3:17-CV-01054-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Venerio Santos, Rebecca Jo Pickett, and Lisa Schukar (Doc. 98). For the reasons set forth below, the motion is granted.

## BACKGROUND

Plaintiff Adam Kane, an inmate previously incarcerated at Centralia Correctional Center ("Centralia"), filed this action pursuant to 42 U.S.C. § 1983 on September 29, 2017. (Doc. 1). Kane alleges that Centralia's Medical Director, Dr. Santos, violated the Eighth Amendment to the United States Constitution when he acted with deliberate indifference to his medical needs by denying him adequate medical care for the growth on his arm (Docs. 1, 7). Kane also alleges Nurse Pickett and Nurse Schukar violated the Eighth Amendment when they acted with deliberate indifference to his medical needs by failing to object or intervene during the procedure performed by Dr. Santos in October 2015

(*Id.*).¹ In addition, Kane alleges that Dr. Santos violated the Fourteenth Amendment by depriving him of his liberty interest and performing the procedure in October 2015 without his consent (*Id.*).

In October 2015, Kane first noticed a zit-like bump on his right forearm near the elbow (Doc. 99-1, p. 35). Initially, the bump was not painful, but over the next couple of days the bump quickly grew to be "substantially bigger" (*Id.* at p. 36). The bump became painful and started to leak fluid whenever Kane would bend his arm (*Id.* at pp. 36-37). About a week after noticing the bump, Kane visited Centralia's health care unit ("HCU") (*Id.* at p. 39). The first record of Kane visiting the HCU for this bump is October 5, 2015 (Doc. 99-2, p. 11).² Dr. Santos observed a 3x2 centimeter bump on Kane's right inner elbow (*Id.*; Doc. 99-6, p. 1). Dr. Santos diagnosed the bump as an infected abscess and prescribed antibiotics, Motrin, and a follow-up in one week (*Id.*).

On the evening of October 7, 2015, Kane reported back to the HCU complaining that the bump was "leaking all over the place" (Doc. 99-1, p. 45; Doc. 99-2, p. 15; Doc. 99-6, p. 2). Dr. Santos was "contacted by phone" and informed that the bump was leaking fluid (Doc. 99-6, p. 2). It was then ordered that Kane be "admitted to the infirmary in isolation," receive "dressing changes with showers," and "continu[e] the antibiotic medication" (Doc. 99-6, p. 2; Doc. 99-2, p. 15; Doc. 99-1, p. 45-46). Later that night, Kane refused a vitals check claiming it was unneeded (Doc. 99-1, p. 46-47; Doc. 99-2, p. 16).

---

¹ On May 9, 2018, Centralia Correctional Center identified Defendant Nurse Schumukor as Lisa Schukar (Doc. 36).
² Kane testifies that he initially reported the bump to the HCU on October 4, 2015, and did not meet with Dr. Santos on that day (Doc. 99-1, p. 39-40).

The next morning, on October 8, 2015, a nurse examined Kane, and noted a "large amount of swelling," a "dime sized opening with a dark spot in the middle[,]" and bloody drainage (Doc. 99-2, p. 16). Kane described the bump as being around the size of a tennis ball (Doc. 99-1, pp. 47-48). Fluid from the bump was obtained for testing, and Kane showered following the dressing change (Doc. 99-1, p. 48; Doc. 99-2, p. 16). Later that same day, Dr. Santos observed that the bump still had swelling, reddening, yellow debris, and fluid (Doc. 99-2, p. 17; Doc. 99-6, p. 2). Dr. Santos officially diagnosed Kane with a "recurrent infected cyst at the right antecubital area" (*Id.*).

Dr. Santos determined that an emergent procedure was necessary to clean out the infected tissue for Kane's health, and to avoid the risk of infection to other prisoners (Doc. 99-1, p. 58; Doc. 99-2, p. 17; Doc. 99-6, p. 2). The procedure took place in the afternoon on October 8, 2015, and involved Dr. Santos, Nurse Schukar, and Nurse Pickett (Doc. 99-1, p. 48; Doc. 99-2, p. 19; Doc. 99-4; Doc. 99-5). A local anesthetic (xylocaine) was injected,[3] and Dr. Santos debrided the infected tissue (Doc. 99-2, p. 19; Doc. 99-6, p. 2).

Following the procedure, Dr. Santos ordered a culture and sensitivity test (Doc. 99-2, pp. 98-99; Doc. 99-6, p. 2). Additionally, he ordered Clindamycin and Motrin to be taken 3-times a day as needed for pain (Doc. 99-2, pp. 19, 96; Doc. 99-6, p. 2). Kane was ordered to take daily showers and visit the HCU for dressing changes, so that the bump could be cleaned with peroxide, saline, and silvadene cream (Doc. 99-2, pp. 19, 21; Doc. 99-6, pp. 2-

---

[3] The administration of xylocaine is notated in Kane's medical chart (Doc. 99-2, p. 19). There is ongoing dispute, however, as to when the xylocaine was administered. Kane argues that the anesthetic was not administered until after he demanded it to relieve the pain (Doc. 99-1, p. 57). Dr. Santos states that he injected the anesthetic before he began the debridement (Doc. 99-6, p. 2).

3). Dr. Santos also ordered a one week follow up (Doc. 99-2, pp. 19, 21).

Every day, from October 9, 2015, through October 14, 2015, Kane visited the HCU for monitoring and for the bump to be redressed by nurses (Doc. 99-2, pp. 23-28). Kane saw Dr. Santos again on October 12, 2015. Kane had no complaints, and there were no signs of infection (Doc. 99-2, p. 25; Doc. 99-6, p. 3). Dr. Santos prescribed continued showers, "wet to dry dressing changes with hydrogen peroxide," and another follow up in one week (*Id.*). Dr. Santos saw Kane on October 15, 2015, and again Kane had no complaints (Doc. 99-2, p. 29; Doc. 99-6, p. 3). While the hole had not yet healed, there were no signs of infection, and the cultures had been received revealing there was no sign of an infection (Doc. 99-2, pp. 29, 98-99; Doc. 99-6, p. 3). Dr. Santos instructed Kane to continue daily showering and ordered dressing changes with "triple antibiotic ointment and Band-Aids" paired with a follow up in six days (Doc. 99-6, p. 3; Doc. 99-2, p. 29). Dr. Santos saw Kane for the last time on October 20, 2015. (Doc. 99-2, p. 31). Kane had no complaints, the wound was healing, and there were no signs of infection (*Id.*). Dr. Santos continued the same treatment and instructed Kane to follow up with him as needed (*Id.*; Doc. 99-6, p. 3).

On November 2, 2015, Kane was medically cleared to be a food handler, as a result of the healed infection (Doc. 99-1, p. 65; Doc. 99-2, p. 31). Following this approval, Kane did not return to the Centralia's HCU for any further treatment (Doc. 99-1, p. 65). In fact, there was no longer a bump on Kane's arm (*Id.* at pp. 67-68). Kane also was able to return to normal daily activities including playing basketball and lifting weights (*Id.* at pp. 65-

66, 69, 76; Doc. 99-2, pp. 43, 78).[4]

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

---

[4] After transferring to Lincoln Correctional Center, in March 2017, Kane noticed the beginning of another bump in the same general area that was about the size of a pea (Doc. 99-1, p. 66, Doc. 99-2, p. 57). This second bump was later operated on in February 2019 (Doc. 99-1, p. 73). After the procedure, the bump became infected again and required a second follow-up procedure in November 2019 (Doc. 99-1, p. 74).

## DISCUSSION

**I.  Count I – Deliberate Indifference**

Kane brings an Eighth Amendment deliberate indifference claim against Santos for denying him adequate medical care for the growth on his right arm in October 2015. Santos agrees that Kane suffered a serious medical condition, but Santos argues he was not deliberately indifferent to Kane.

The Eighth Amendment prohibits cruel and unusual punishments and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). A prisoner's dissatisfaction with a medical professional's prescribed course of treatment does not give rise to a successful deliberate indifference claim unless the treatment is so "blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (quoting *Thomas v. Pate*, 493 F.2d 151, 158 (7th Cir. 1974)).

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if " 'a physician has diagnosed it as requiring treatment, or the need for treatment

would be obvious to a layperson.'" *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010); *accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of *serious* harm") (internal quotation marks omitted, emphasis added).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id.* at 653. The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *see also Hammond v. Rector*, 123 F. Supp. 3d 1076, 1086 (S.D. Ill. 2015) ("isolated occurrences of deficient medical treatment are generally insufficient to establish . . . deliberate indifference"). Deliberate indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(citing *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th

Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (citing *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant [ ] knew better than to make the medical decision[ ] that [he] did," *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010).

Construing the evidence in a light most favorable to Kane, there is nothing to suggest that Dr. Santos was deliberately indifferent to Kane's medical needs. For instance, even if Santos told Kane that he is not going to see a specialist because the State is broke, Santos never prevented Kane from receiving treatment (Doc. 99-1, p. 52). Kane's medical records show that Santos continually assessed Kane's complaints each time he sought help at Centralia's HCU. Kane's medical records show an extensive record of follow-up appointments and testing to address Kane's bump and to protect it from infection. Again, from the beginning of October 2015 until Kane stopped seeking treatment at Centralia, he received daily cleanings of the infected area, a procedure to remove the infected tissue, multiple prescriptions for pain medication, and a culture and sensitivity test—over the

course of more than a dozen appointments (Doc. 99-2, pp. 11-19, 21, 23-29, 31, 96, 98-99; Doc. 99-6, p. 2-3).

Kane notes he should have seen a specialist because the IDOC "ended up sending [him] out to some type of specialist, and [he] had muscle atrophy on [his] left side" (Doc. 99-1, pp. 51, 69).[5] Notably, the bump was on Kane's right forearm—not his left. More importantly, after the procedure, Kane saw Dr. Santos on October 12, 2015, October 15, 2015, and October 20, 2015, and had no complaints (Doc. 99-2, pp. 25, 29, 31). By November 2, 2015, Kane was medically cleared to be a food handler, as a result of the healed infection (Doc. 99-1, p. 65; Doc. 99-2, p. 31). Kane never returned to Centralia's HCU for any further treatment (Doc. 99-1, p. 65). There was no longer a bump on Kane's arm, and he was able to return to normal daily activities—even playing basketball and lifting weights (*Id.* at pp. 65-69, 76; Doc. 99-2, pp. 43, 78).

Kane testified that the "procedure needed to be done[,]" but did not "necessarily" agree that it was an emergency (Doc. 99-1, p. 58). Kane wanted the infection removed, but he did not want *Dr. Santos* to perform the procedure because of conversations with other prisoners regarding Dr. Santos's competence (*Id.* at pp. 50-51). On these facts, the Court cannot say that Dr. Santos was deliberately indifferent to Kane's medical needs, and summary judgment must be granted in favor of Dr. Santos on Count I.

---

[5] Later Kane reported that he had muscle atrophy on his right side. But Kane admits that the muscle loss is related to a prior car accident (Doc. 99-1, p. 77, Doc. 99-2, p. 59).

## II. Count II – Failure to Intervene

Kane brings a failure to intervene claim against Pickett and Schukar for failing to object to or intervene and stop the procedure performed by Dr. Santos. Failure to intervene is also a constitutional violation under the Eighth Amendment. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Although nurses aide physicians and "may generally defer to instructions given by physicians, they have an independent duty to ensure that inmates receive constitutionally adequate care." *Perez v. Fenoglio*, 792 F.3d 768, 779 (7th Cir. 2015) (citing *Berry v. Peterman*, 604 F.3d 435, 443 (7th Cir. 2010)).

"In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . ." *Harper*, 400 F.3d at 1064. As explained above, Kane failed to establish that Dr. Santos was deliberately indifferent to his medical needs in violation of his Eighth Amendment. Thus, summary judgment must be granted in favor of Defendants Pickett and Schukar on Count II.

## III. Count III – Fourteenth Amendment Due Process

Kane brings a Fourteenth Amendment due process claim against Dr. Santos for depriving Kane of a liberty interest when he performed procedure on his right arm without first obtaining his consent in October 2015 (Docs. 1, 7). "[P]risoners have a Fourteenth Amendment right to informed consent." *Knight v. Grossman*, 942 F.3d 336, 342 (7th Cir. 2019). "The right to refuse medical treatment carries with it an implied right to the information necessary to make an informed decision about whether to refuse the treatment." *Id*. "Together, the right to refuse treatment and the right to information required to do so constitute a right to informed consent." *Id*.

Evaluating Kane's due process claim involves a two-step inquiry. *Id.* at 343. First, Kane must "establish that his right to informed consent was violated." *Id.* at 343-44. "To do this, [Kane] must prove that (1) he was deprived of information that a reasonable patient would deem necessary to make an informed decision about his medical treatment, (2) the defendant acted with deliberate indifference to [ ] [his] right to refuse treatment, and (3) if [Kane] had received the information, he would have refused the treatment." *Id.* at 344. Second, the court must balance "[Kane's] right to informed consent against countervailing state interests." *Id.* "Liability arises only if, in the end, [Kane's] right outweighs the state interests." *Id.*

Here, Kane was informed about the degree of the infection, and the need for an emergency procedure:

> Defendants' Counsel: And Dr. Santos described the degree of infection as an emergency procedure that needed to be performed. Do you agree with that?
>
> Kane: Yeah.
>
> Defendants' Counsel: Okay.
>
> Kane: I don't necessarily know if I was necessarily labeled as an emergency; but, I mean, I know that a procedure needed to be done –
>
> Defendants' Counsel: Okay.
>
> Kane: -- in my opinion.

(Doc. 99-1, p. 58). Besides having information to make an informed decision, Kane fails at proving that he would have refused the treatment. Indeed, the only issue Kane had with the procedure was that he wanted somebody else to remove the infection:

> Defendants' Counsel: Okay. So did you want the infection removed?

Kane: Yes.

Defendants' Counsel: Okay. Is your issue with -- and I'm talking specifically about the informed consent part of your claim. Is your issue that Dr. Santos removed the infection because you didn't want it removed or you wanted somebody else to remove it?

Kane: My issue was more so that I wanted somebody else to remove it.

(*Id*. at p. 50).

In *Knight*, 942 F.3d at 338, a prisoner brought suit under 42 U.S.C. § 1983, when he "went under the knife for one surgery and [defendant], upon seeing during the operation that he made the wrong diagnosis, performed another." The Seventh Circuit held that the prisoner failed to meet his burden of proof, however, and acknowledged that "saying he may have refused treatment is not the same as saying he would have." *Id*. at 344.

If the prisoner in *Knight* failed to meet his burden of proof, Kane surely fails here. Kane never said he *may have refused treatment*. There is no question as to whether Kane wanted this treatment. His only issue was that Dr. Santos was the one performing the procedure.

Ignoring the first inquiry does not help Kane as he also fails under the second inquiry. By balancing Kane's right against state interests, one quickly sees that Kane's right does not outweigh state interests. Kane had a leaking infection with a rapid growth rate. Kane's infection appeared to be resistant to some antibiotics. Leaving Kane's condition untreated could have resulted in further harm to Kane and spread to staff and other prisoners. After the procedure, Kane's bump improved, and his condition did not spread to others. Accordingly, summary judgment must be granted in favor of Santos on Count III.

CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment (Doc. 98) is **GRANTED** as to Defendants Venerio Santos, Rebecca Jo Pickett, and Lisa Schukar. Plaintiff Kane shall recover nothing. The Clerk of Court shall close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: June 30, 2021

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**